*UNITED STATES DISTRICT COURT*

*SOUTHERN DISTRICT OF FLORIDA*

*MIAMI DIVISION*

| | |
|---|---|
| *UNITED STATES OF AMERICA,* | . *Case No. 08-20849-CR-AJ* |
| | . |
| *Plaintiff,* | . *Miami, Florida* |
| | . *October 5, 2009* |
| *v.* | . *10:36 a.m.* |
| | . |
| *ASHOK N. MAHIBUBANI-LADHARAM,* | . |
| | . |
| *Defendant.* | . |

*. . . . . . . . . . . . . . . . .*

*-  -  -  -  -*

*Transcript of Plea Colloquy had*
*before the Honorable Adalberto Jordan,*
*United States District Judge.*
*-  -  -  -  -*

*APPEARANCES:*

*For the Government:    Eric E. Morales*
*Assistant U.S. Attorney*
*99 N.E. 4th Street*
*Miami, Florida  33132*


*For the Defendant:     Jeffrey M. Voluck, Esq.*
*Law Offices of Jeffrey M. Voluck, PA*
*One Broward Boulevard, Suite 700*
*Fort Lauderdale, Florida  33301*


*Court Reporter:        Francine C. Salopek, RMR, CRR*
*Official Court Reporter*
*United States District Court*
*400 North Miami Avenue, Room 10-1*
*Miami, Florida  33128-1807*
*(305)523-5568*


*-  -  -  -  -*


*Proceedings recorded by mechanical stenography, transcript*
*produced by computer.*

1                **MONDAY, OCTOBER 5, 2009, 10:36 A.M.**

2          **THE COURT:**  Good morning.  Please be seated.

3          **MR. VOLUCK:**  Good morning, your Honor.

4          **MR. MORALES:**  Good morning, your Honor.

5          **THE COURT:**  This is Case Number 08-20849, United

6    States vs. Ashok Narain Mahibubani-Ladharam.  I hope I got

7    the name close to right, and if not, I apologize.  If you

8    could please announce your appearances.

9          **MR. MORALES:**  Eric Morales on behalf of the United

10   States.

11          Good morning, your Honor.

12          Good morning, everybody.

13          **THE COURT:**  Good morning.

14          **MR. VOLUCK:**  Good morning, your Honor.  Jeffrey

15   Voluck for Mr. Ashok Mahibubani.

16          **THE COURT:**  Good morning.

17          Good morning, Mr. Mahibubani.

18          **THE DEFENDANT:**  Good morning.

19          **THE COURT:**  Mr. Voluck, I understand that

20   Mr. Mahibubani wishes to enter a guilty plea to Counts 1 and

21   24 of the indictment pursuant to a written plea agreement.

22          **MR. VOLUCK:**  That's correct, your Honor.

23          **THE COURT:**  All right.  Thank you.

24          **MR. VOLUCK:**  We are, however, going over the

25   factual proffer at this time.  And I would request another

```
 1   few minutes, if we could.
 2            THE COURT:  Sure.  I'll be back in five minutes.
 3            MR. VOLUCK:  Thank you, your Honor.
 4            MR. MORALES:  Thank you, your Honor.
 5            (Recess taken at 10:37 a.m. until 10:50 a.m.)
 6            THE COURT:  Please be seated.
 7            Mr. Voluck, you're ready to proceed?
 8            MR. VOLUCK:  Yes, your Honor.  And I appreciate the
 9   consideration that you gave us.
10            THE COURT:  All right.  I understand from Maria
11   that Mr. Mahibubani is not going to sign the factual proffer,
12   but still wants to go forward with the plea.
13            MR. VOLUCK:  That's correct, your Honor.  We have
14   that worked out with the prosecutor.
15            THE COURT:  All right.  Thank you.
16            Mr. Mahibubani, before I can accept your guilty
17   plea, I need to ask you a series of questions so that I can
18   make sure that you understand your rights and know what is
19   going on here.  If at any time you don't understand
20   something, or wish me to go over something again, let
21   Mr. Voluck know, or let me know, and I'll be happy to stop
22   and start again.  All right?
23            THE DEFENDANT:  Yes.
24            THE COURT:  Please stand for a second so that you
25   can be sworn in.
```

```
 1              COURTROOM DEPUTY:  Raise your right hand.

 2      (ASHOK NARAIN MAHIBUBANI-LADHARAM, DEFENDANT HEREIN, WAS

 3                            SWORN.)

 4              COURTROOM DEPUTY:  Thank you.

 5              THE COURT:  Thank you.  Please be seated.

 6              The first thing I need to do is advise you that

 7      you're under oath.  That means that if you answer any of my

 8      questions falsely, your answers may later be used against you

 9      in another prosecution for perjury or for making a false

10      statement.

11              Do you understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Can you please tell me your full name.

14              THE DEFENDANT:  Ashok Narain Ladharam-Mahibubani

15      (sic).

16              THE COURT:  Where were you born?

17              THE DEFENDANT:  Philippines.

18              THE COURT:  In the Philippines?

19              THE DEFENDANT:  Yes.

20              THE COURT:  How old are you?

21              THE DEFENDANT:  Thirty-six.

22              THE COURT:  How far did you go in school?

23              THE DEFENDANT:  College.

24              THE COURT:  Did you finish college?

25              THE DEFENDANT:  Yes.
```

1          **THE COURT:**  Okay.  Can you please tell me your

2    citizenship?

3          **THE DEFENDANT:**  Filipino.

4          **THE COURT:**  Have you ever suffered from or been

5    treated for any mental illness or addiction to narcotic drugs

6    of any kind?

7          **THE DEFENDANT:**  I have been treated for the last

8    two years, three years with a drug called Paxil and Tafil for

9    disorders of depression and anxiety.

10         **THE COURT:**  Are you still taking those medications?

11         **THE DEFENDANT:**  Yes, I am.

12         **THE COURT:**  How often do you take them?

13         **THE DEFENDANT:**  I take them twice a day.

14         **THE COURT:**  In the afternoons, or in the evenings,

15    or in the mornings?

16         **THE DEFENDANT:**  Mornings and in the evenings.

17         **THE COURT:**  So you took some last night and this

18    morning, as well?

19         **THE DEFENDANT:**  Yes.

20         **THE COURT:**  Do those medications in any way

21    affect -- excuse me -- your ability to understand or

22    comprehend what is going on here today?

23         **THE DEFENDANT:**  Honestly, they do.

24         **THE COURT:**  They affect it?

25         **THE DEFENDANT:**  Well, normally, if you take

1    something for antianxiety, it usually make you less anxious.

2    If it's antidepression, you know....

3              **MR. VOLUCK:**  If I may, your Honor.

4              The question is:  Is it preventing you from

5    understanding the judge today?

6              **THE DEFENDANT:**  No, definitely not.

7              **THE COURT:**  I certainly -- thank you, Mr. Voluck.

8              I understand that they do affect you, obviously

9    they wouldn't be prescribed for you.  But hopefully, they

10   affect you in a good way, and that is they reduce your

11   anxiety and your stress and let you function in a better way.

12   Is that accurate?

13             **THE DEFENDANT:**  Correct.

14             **THE COURT:**  Are you being seen by any other doctor

15   or medical professional for any other condition or illness at

16   this time?

17             **THE DEFENDANT:**  No, just the psychiatrist in the

18   BOP.

19             **THE COURT:**  Just what, I'm sorry?

20             **THE DEFENDANT:**  A psychiatrist in the BOP.  That's

21   all.

22             **THE COURT:**  At BOP.  Okay.

23             Aside from the medications you told me about, have

24   you taken any other drugs, medication, or alcohol in the last

25   48 hours?

1          **THE DEFENDANT:**  No, sir.

2          **THE COURT:**  Mr. Voluck, in your opinion, is

3    Mr. Mahibubani competent to enter a guilty plea?

4          **MR. VOLUCK:**  Yes, your Honor.

5          **THE COURT:**  Thank you.

6          Mr. Mahibubani, have you received or been given a

7    copy of the indictment pending against you in this case?

8          **THE DEFENDANT:**  Yes, your Honor.

9          **THE COURT:**  Have you had a chance to discuss the

10   charges and the case in general with Mr. Voluck?

11         **THE DEFENDANT:**  Yes, your Honor.

12         **THE COURT:**  Have you been able to talk to him about

13   your options, for example, whether it makes sense for you to

14   enter a guilty plea, and if not, what sort of defense

15   strategies you might have available to you if you chose to

16   plead not guilty and go to trial?

17         **THE DEFENDANT:**  Yes, your Honor, I have.

18         **THE COURT:**  Okay.

19         Maria, can you print out a copy of the indictment

20   for me?  It's not here.

21         You've agreed to plead guilty to Counts 1 and 24.

22   Count 1 of the indictment charges --

23         Mr. Morales, do you have an extra copy of the plea

24   agreement there -- excuse me -- of the indictment there?

25         **MR. MORALES:**  Yes, your Honor.

1          **THE COURT:**  If I could just borrow it for a second,

2     please.

3          **MR. MORALES:**  It's not a signed copy, your Honor.

4          (Discussion had off the record.)

5          **THE COURT:**  All right.  Count 1 charges you with

6     violating Title 18, United States Code, Section 1956(h).  The

7     allegation is that from on or about -- excuse me -- June 15th

8     of 2007, through on or about January of 2009, in Miami-Dade

9     County and in this district, you and others entered into a

10    conspiracy or illegal agreement to commit what are called

11    money laundering offenses.

12         Specifically, the indictment alleges that you

13    knowingly, willfully, and with the specific intent to further

14    the unlawful purpose of the plan agreed with other

15    individuals to commit violations of Title 18, United States

16    Code, Section 1956(a)(1)(B)(i), that is, to knowingly conduct

17    financial transactions affecting interstate and foreign

18    commerce, involving the proceeds of specified unlawful

19    activities, knowing that the transactions were designed, in

20    whole or in part, to conceal and disguise the nature,

21    location, source, ownership, and control of those proceeds.

22    And that while conducting those transactions, you knew that

23    the property involved in the financial transactions

24    represented the proceeds of some form of unlawful activity.

25         According to the indictment, there was a second

```
 1  objective to the conspiracy, and that is to commit violations
 2  of Title 18, United States Code, Section 1956(a)(2)(B)(i).
 3  The allegation with regard to that objective was that you
 4  agreed to knowingly transport, transmit, and transfer
 5  monetary instruments and funds from a place in the United
 6  States to and through a place outside of the United States,
 7  knowing that those instruments and funds represented the
 8  proceeds of some form of unlawful activity, and knowing that
 9  such transport, transmission, and transfer was designed, in
10  whole or in part, to conceal and disguise the nature,
11  location, source, ownership, and control of the proceeds of
12  that unlawful activity.
13          Count 1 alleges that the specified unlawful
14  activity referred to in Count 1 is the illegal manufacture,
15  importation, receipt, concealment, purchase, sale, or dealing
16  in a controlled substance punishable under federal law.
17          Do you understand the allegations in Count 1?
18          THE DEFENDANT:  I do.
19          THE COURT:  If you chose to plead not guilty and go
20  to trial on this charge, the government would have to prove
21  various things beyond a reasonable doubt to obtain a verdict
22  of guilty from a jury.
23          First, the government would have to prove that at
24  some point between June 15th of 2007 and January 23rd of
25  2009, you came to an illegal agreement or understanding with
```

1    at least one other person.

2              The government would have to prove that you did so

3    knowingly, intentionally, and willfully.

4              The government would have to prove that what you

5    agreed to do was to try to commit money laundering offenses,

6    in violation of the laws of the United States, specifically,

7    the two types of money laundering transactions that I

8    specified to you before.

9              The government would have to prove that the

10   proceeds or funds that you agreed to try to launder or engage

11   in prohibited financial transactions in represented the

12   proceeds of specified unlawful activity, that is, the

13   violations of federal narcotics laws in the United States.

14             The government would also have to prove that you

15   knew that the property involved in these financial

16   transactions represented the proceeds of some form of

17   unlawful activity.

18             Do you understand the elements of the charge in

19   Count 1?

20             **THE DEFENDANT:**  I do.

21             **THE COURT:**  You've also agreed to plead guilty to

22   Count 24.  Count 24 charges a violation of Title 21, United

23   States Code, Section 963.  The allegation is that from on or

24   about June 8th of 2007, through on or about January 23rd of

25   2009, in Miami-Dade County and within this district, you came

1  to an illegal agreement with at least one other person to

2  import into the United States from a place outside of the

3  United States a controlled substance.

4          According to Count 24, the violation involved, with

5  regards to this offense, was five kilograms or more of a

6  mixture and substance containing a detectable amount of

7  cocaine.

8          Do you understand that charge?

9          **THE DEFENDANT:**  Yes, I do.

10         **THE COURT:**  If you chose to plead not guilty and go

11 to trial on this charge, the government would have to prove

12 various things beyond a reasonable doubt to obtain a verdict

13 of guilty.

14         First, the government would have to prove that at

15 some point between June 8th of 2007 and January 23rd of 2009,

16 you came to an illegal agreement or understanding with at

17 least one other person.

18         The government would have to prove that you did so

19 knowingly and intentionally.

20         The government would have to prove that the

21 agreement was to import into the United States from a place

22 outside of the United States five kilograms or more of

23 cocaine.

24         Do you understand the elements of the charge in

25 Count 24?

1          **THE DEFENDANT:**  Yes.

2          **THE COURT:**  With regards to both Count 1 and

3     Count 24, the government would also have to prove that at

4     least some of the conduct involved or alleged took place in

5     the Southern District of Florida.

6          Do you understand that as well?

7          **THE DEFENDANT:**  Yes.

8          **THE COURT:**  Count 1 of the indictment carries with

9     it a maximum sentence of 20 years in prison.  Any term of

10    imprisonment is to be followed by a term of supervised

11    release of not more than three years.  There is also a

12    maximum fine of up to $500,000 or twice the value of the

13    property involved in the prohibited transactions, whichever

14    is greater.  There is also a mandatory special assessment of

15    a hundred dollars.

16         Do you understand the penalties that you are

17    exposed to if you enter a guilty plea to Count 1?

18         **THE DEFENDANT:**  I do, your Honor.

19         **THE COURT:**  Count 24 of the indictment carries with

20    it a minimum term of imprisonment of ten years and a maximum

21    term of imprisonment of life imprisonment.  Any term of

22    imprisonment is to be followed by a term of supervised

23    release of at least five years.  There is also a maximum fine

24    of up to $4 million.  And there is a mandatory special

25    assessment of a hundred dollars.

```
1              Do you understand the penalties that you are
2    exposed to with respect to Count 24?
3              THE DEFENDANT:  I do.
4              THE COURT:  Have you had a chance to discuss the
5    advisory Sentencing Guidelines and how they might affect your
6    case with Mr. Voluck?
7              THE DEFENDANT:  Yes, I have.
8              THE COURT:  The Sentencing Guidelines -- excuse
9    me -- are advisory; they are not binding.  I'm required to
10   consider them, but I'm not required to follow them.  What I
11   have to do is try to figure out an advisory sentencing range
12   for you under the Guidelines by scoring your offenses and
13   your criminal history or your background, if there is any.
14   Once I figure out the advisory range, I'll take it into
15   account, along with a number of other statutory sentencing
16   factors -- excuse me -- so that I can try to impose a
17   sentence that is reasonable under the circumstances.
18             Do you understand that concept?
19             THE DEFENDANT:  I do.
20             THE COURT:  Any estimate of the sentence given to
21   you by Mr. Voluck, or by anyone else, is only a prediction,
22   but not a promise.  I'm not going to be able to determine
23   your sentence until I review a Presentence Investigation
24   Report and receive comments and objections from the parties.
25             Do you understand that?
```

1            **THE DEFENDANT:**  I do.

2            **THE COURT:**  You're not going to be allowed to take

3 back or withdraw your guilty plea solely as a result of the

4 sentence you receive or merely because I choose not to follow

5 one or more of the parties' sentencing recommendations.

6            Do you understand that, as well?

7            **THE DEFENDANT:**  Yes, sir.

8            **THE COURT:**  Under some circumstances, you or the

9 government may have the right to appeal the sentence that I

10 impose.

11            Do you understand that?

12            **THE DEFENDANT:**  Yes.

13            **THE COURT:**  If there are extraordinary

14 circumstances, I can depart from the initial advisory range

15 under the Sentencing Guidelines and fix an advisory range

16 that is higher or lower than that initial range.  If I depart

17 upward and that affects your sentence, you can appeal.  If I

18 depart downward and that affects your sentence, the

19 government can appeal.

20            Do you understand that?

21            **THE DEFENDANT:**  Yes, your Honor.

22            **THE COURT:**  I have here a plea agreement that

23 contains a signature above your name on page 7.  Did you sign

24 that document earlier today?

25            **THE DEFENDANT:**  Yes, your Honor.

1        **THE COURT:**  Did you have a chance to go over it

2   with Mr. Voluck before you signed it?

3        **THE DEFENDANT:**  Yes, I did.

4        **THE COURT:**  Do you understand the terms of the

5   agreement?

6        **THE DEFENDANT:**  Yes, I do.

7        **THE COURT:**  All right.  Let me go over the basic

8   provisions with you.

9        You agree to plead guilty to Counts 1 and 24, which

10  I've explained to you already.  In exchange, the government

11  agrees to seek dismissal of Counts 2 through 23 and 25 of the

12  indictment as to you after sentencing.

13       Is that your understanding of what's going to

14  occur?

15       **THE DEFENDANT:**  Correct.

16       **THE COURT:**  Paragraph 3 tells you about the

17  Sentencing Guidelines and their advisory nature, and I've

18  gone over the Guidelines with you already.

19       In paragraphs 4 and 5, you are told about the

20  penalties that you are facing as a result of your guilty

21  plea, and I've told you about those penalties as well.

22       In paragraph 6, the government reserves the right

23  to inform the probation officer and me of any and all facts

24  that are pertinent to sentencing, that includes all relevant

25  information concerning the offenses that you are going to

```
 1    plead guilty to, other offenses, whether charged or not, and
 2    information about you and your background.  The government
 3    also reserves a right to make any recommendation as to
 4    sentencing, but always subject to whatever is set forth in
 5    this agreement.
 6              Do you understand that?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  In paragraph 7, the government agrees
 9    to recommend at sentencing that I reduce your offense level
10    by up to three levels, based upon your acceptance of personal
11    responsibility.
12              The government, however, is not required to make
13    this motion or recommendation on your behalf if one of three
14    things occur:  First, if you fail or refuse to make a full,
15    accurate, and complete disclosure to the probation office of
16    the circumstances surrounding the relevant offense conduct;
17    second, if you are found to have misrepresented facts to the
18    government prior to entering into the plea agreement; or,
19    third, if you commit any misconduct after entering into the
20    plea agreement.
21              Do you understand these possible exceptions?
22              THE DEFENDANT:  Yes.
23              THE COURT:  In paragraph 8, you and the government
24    agree to jointly recommend that I find that you meet the
25    criteria set forth in Section 5C1.2 of the Sentencing
```

1   Guidelines, and that I impose a sentence without regard to

2   the ten-year minimum sentence that I told you about earlier.

3           In order for you to meet the safety valve criteria,

4   you're going to have to meet the factors set forth in

5   paragraph 8 of your plea agreement.

6           Do you understand that?

7           **THE DEFENDANT:**  Yes.

8           **THE COURT:**  In paragraph 9, you and the government

9   agree to make certain recommendations with regards to

10  findings and conclusions that I should make to apply the

11  advisory Sentencing Guidelines.

12          First, the parties agree that the value of the

13  laundered funds for purposes of the Guidelines is $698,560.

14  The parties further agree that for purposes of

15  Section 2S1.1(b)(i), you knew or believed that the laundered

16  funds were the proceeds of an offense involving the

17  manufacture, importation, or distribution of a controlled

18  substance.  Finally, the parties agree to jointly recommend

19  that I find that the quantity of controlled substance in this

20  offense, for purposes of the Guidelines, was at least

21  50 kilograms, but less than 150 kilograms of cocaine.

22          Do you understand those joint recommendations?

23          **THE DEFENDANT:**  Yes.

24          **THE COURT:**  And by entering into those joint

25  recommendations, you're going to allow me to make certain

1    factual findings, consistent with those recommendations,

2    without requiring the government to put on any further

3    evidence.

4              Do you understand that?

5          **THE DEFENDANT:**  Yes.

6          **THE COURT:**  In paragraph 10, you agree to assist

7    the government in all forfeiture proceedings that might apply

8    in this case.  Is that what you've agreed to do?

9          **THE DEFENDANT:**  Correct.

10         **THE COURT:**  Paragraph 11 reminds you again that I

11   haven't yet been able to determine your sentence, that any

12   estimate you've received from Mr. Voluck, or from anyone

13   else, is only a prediction, but not a promise, and that I'm

14   not required to accept any of the sentencing recommendations

15   made by the parties.

16             Paragraph 12 contains appeal waiver language.  Let

17   me tell you about your appellate rights before we discuss the

18   appeal waiver.

19             Under Section 3742 of Title 18 of the United States

20   Code, you have a right to appeal your conviction and whatever

21   sentence I will ultimately impose in this case.  That is a

22   right given to you by statute, and no one can take that right

23   away from you.

24             You can appeal on a number of grounds that might be

25   available to you.  For example, if you think I misapplied or

1    misinterpreted the advisory Sentencing Guidelines and that

2    led me to impose an improper or incorrect sentence, you can

3    appeal.  If you think I got the facts about you and your

4    involvement in this case wrong and that led me to impose an

5    incorrect sentence, you could appeal.  And even if you think

6    I did everything else correctly, if you believe that I

7    imposed a sentence that was unreasonable, in light of the

8    statutory factors that I must take into account, you can

9    appeal on that ground as well.

10            Do you understand your right of appeal?

11            **THE DEFENDANT:**  I do.

12            **THE COURT:**  I'm sorry?

13            **THE DEFENDANT:**  Yes, I do.

14            **THE COURT:**  You say in paragraph 12 that you

15   understand your right of appeal, and in exchange for the

16   undertakings made by the government in this plea agreement,

17   you are waiving all of your appellate rights, subject to some

18   exceptions that I'll tell you about in a second.  Is that

19   what you've generally agreed to do?

20            **THE DEFENDANT:**  Yes.

21            **THE COURT:**  The exceptions are as follows:  If I

22   impose a sentence that exceeds the maximum permitted by

23   statute, you can appeal.  If I impose a sentence based upon

24   an upward departure or upward variance from the applicable

25   Guideline range, you can appeal.

```
 1            Excuse me.
 2            And if the government decides to appeal for any
 3  reason whatsoever, then you are released from your appeal
 4  waiver, and you can appeal on whatever grounds you believe
 5  are available to you.
 6            Do you understand that?
 7            THE DEFENDANT:  Yes.
 8            THE COURT:  Paragraph 13 says that this is the
 9  entire agreement and understanding between you and the
10  government, and that there are no other agreements, promises,
11  representations, or understandings, unless contained in a
12  letter from the United States Attorney's office and executed
13  by all parties and counsel prior to the change of plea.
14            Is that correct?
15            THE DEFENDANT:  Correct.
16            THE COURT:  Mr. Morales, are there any such other
17  agreements?
18            MR. MORALES:  Not at this time, your Honor.
19            THE COURT:  Mr. Voluck, is that correct?
20            MR. VOLUCK:  That's correct, your Honor.
21            THE COURT:  All right.  Thank you.
22            Aside from what we've talked about in court so far
23  here today, Mr. Mahibubani, has anyone made any other promise
24  or given you any other assurance in an effort to get you to
25  plead guilty in this case?
```

1          **THE DEFENDANT:**  No, your Honor.

2          **THE COURT:**  Has anyone tried in any way to force

3    you, pressure you, or coerce you into pleading guilty?

4          **THE DEFENDANT:**  No, your Honor.

5          **THE COURT:**  Are you pleading guilty of your own

6    free will because are you, in fact, guilty?

7          **THE DEFENDANT:**  Yes, your Honor.

8          **THE COURT:**  The offenses to which you are pleading

9    guilty are felony offenses.  An adjudication of guilt may

10   deprive you of valuable civil rights in the future, at least

11   in the United States, such as the right to vote, the right to

12   hold office, the right to serve on a jury, and the right to

13   possess any kind of a firearm.

14          Do you understand those possible consequences?

15          **THE DEFENDANT:**  Yes, I do.

16          **THE COURT:**  An adjudication of guilt can also

17   affect your immigration status and/or your ability to remain

18   in or return to the United States.

19          Do you understand that, as well?

20          **THE DEFENDANT:**  Yes.

21          **THE COURT:**  You have a right to plead not guilty to

22   any of the offenses charged against you, and to persist in

23   that not guilty plea.  If you plead not guilty, you will have

24   the right to a trial before a jury of your peers.

25          At a trial, as now, you'd be presumed to be

1    innocent, and the government would have the burden of proving
2    your guilt beyond a reasonable doubt.
3            You would have the right to the assistance of
4    counsel for your defense, and if you couldn't afford an
5    attorney, I would appoint one to represent you at no cost to
6    you.
7            You would have the right to see and hear all the
8    witnesses against you, and you would have the right to have
9    those witnesses questioned or cross-examined in your defense.
10           Do you understand those rights?
11           **THE DEFENDANT:**  Yes, I do.
12           **THE COURT:**  You would further have the right to the
13   issuance of subpoenas or compulsory process so that you might
14   compel the attendance of witnesses who could testify on your
15   behalf or in your defense.
16           Finally, you would have the right to decline to
17   testify at trial, unless you voluntarily elected to do so in
18   your own defense.  If you chose not to testify, your silence
19   could not be used against you in any way, and you would
20   retain the presumption of innocence.
21           Do you understand these additional rights?
22           **THE DEFENDANT:**  Yes.
23           **THE COURT:**  If you enter a plea of guilty, there
24   will be no trial.  You will have waived or given up right to
25   a trial.

1      Do you understand that?

2          **THE DEFENDANT:**  Yes.

3          **THE COURT:**  All right.  Please listen carefully.

4   I'm going to have Mr. Morales explain in proffer form what

5   the government would be able to prove if this case were to go

6   to trial against you on Counts 1 and 24.  Once he's done, I'm

7   going to ask you if those facts are correct or if you have

8   any issue with any of them.

9          Mr. Morales.

10         **MR. MORALES:**  Thank you, your Honor.

11         If this -- I will proceed slowly, your Honor, since

12  there's no signed proffer.

13         If this case were to proceed to trial, the United

14  States would have proved by competent evidence beyond a

15  reasonable doubt that in 2007, a DEA confidential source

16  identified defendant as a money launderer he had worked with

17  in the past.  Following DEA instructions, on June 8, 2007,

18  the confidential source resumed communicating with defendant

19  via instant messaging over the Internet, telephone

20  conversations, and e-mail.  The source told defendant that he

21  was in Miami.

22         Defendant and the source discussed defendant

23  sending multikilogram shipments of cocaine from Panama to the

24  source in Miami, including discussion of profit they would

25  make and the means to smuggle the kilograms.

1            In a chat on June 14, 2007, defendant and the

2    source discussed what percentage of commission they would get

3    for laundering drug proceeds on behalf of third parties.

4    Between June 15th and July 15th, defendant and the source

5    continued to communicate regarding the possible earnings they

6    could make from the cocaine smuggling and money laundering.

7            On July 16, 2007, the defendant told the source

8    that he knew of $250,000 in New York that needed to be

9    laundered.  The source instructed defendant to give the

10   source's telephone number to the person who had the money.

11   In a later telephone conversation, defendant informed the

12   source that the commission would be ten percent and that the

13   amount would be either 200,000 or 250,000.

14           On July 18th of 2007, a DEA confidential source in

15   New York, hereinafter source number two, returned a telephone

16   call to a male that had contacted the source, the original

17   source, source number one, on behalf of defendant regarding

18   the pending money laundering transaction.  Source two

19   represented himself to be the person who would be picking up

20   the money for source one.  The unknown male and source two

21   set up a meeting later that afternoon at a location in

22   Queens, New York.  Source two was met by Mario Gondola and

23   Omar Thomas in a vehicle.  Source two received a cardboard

24   box from Thomas and Gondola that contained $250,040.

25   Afterwards, source one telephoned the defendant to let him

1   know that the "package" had been received.

2           These funds were deposited into a DEA account in

3   Miami.  From July 20, 2007, to July 23, 2007, DEA agents,

4   acting in an undercover capacity, electronically

5   wire-transferred the funds from the undercover account, as

6   per instructions given to the source one, via the Internet,

7   by Sanjay Mahibubani and defendant.  These transactions were

8   wires sent to bank accounts in the Philippines and Hong Kong.

9           On July 20, 2007, agents learned that the Bank of

10  America returned a wire -- one of the wire transfers that had

11  been sent to China Exports Limited back to the undercover

12  bank account due to problems with the receiving bank account.

13  Defendant instructed the source to send part of the money to

14  an account in Hong Kong, and Sanjay instructed the source to

15  send the balance to an account in the Philippines.

16          In a chat on July 22nd of 2007, defendant told the

17  source in Miami that his people have 750, meaning that his

18  contact in New York had $750,000.  In a chance -- excuse

19  me -- in a chat between the source and Sanjay on July 26,

20  2007, the source asked Sanjay to pass a telephone number to

21  the people that had the money in New York.  Thereafter,

22  source two spoke with Omar Thomas on the telephone.  In calls

23  with source one and source two leading up to the transaction,

24  Thomas discussed the amount of money, instructions received

25  from Mario, meaning Mario Gondola, in Panama, and whether

1    source two could receive the whole amount.

2         Source one told Thomas that they could only receive

3    half the amount.  Thomas said he would divide the money

4    himself.  Thomas picked up source two at the agreed upon

5    location in a vehicle.  Thomas gave a cardboard box which

6    contained $298,850 to the source two.  He in -- source two,

7    in turn, gave the money to DEA agents.  The money was brought

8    down to Miami and deposited into an undercover bank account

9    in Miami.

10        Thereafter, defendant provided source one with

11   wiring instructions for this money.  The wires were sent, per

12   the instructions, to international bank accounts in BAC,

13   B-A-C, Florida Bank for credit to BAC International Bank, to

14   banks in Hong Kong and a bank in Singapore (sic).

15        The morning of July 27th, agents surveilling Thomas

16   in Brooklyn, New York, observed him place a bag in a vehicle.

17   A traffic stop was conducted of the vehicle, and a search of

18   the vehicle revealed $149,670 in the bag that Thomas had just

19   put in the vehicle.  This money was the balance of the

20   $450,000 that Thomas had divided prior to meeting up with

21   CS-2.  Thomas consented to a search of his residence.  Agents

22   conducting this search recovered an additional $67,000 in a

23   bag and a loaded pistol.  Thomas was arrested for the pistol,

24   but no charges were brought for the money laundering to

25   maintain the investigation on an ongoing basis.

1            Following Thomas' arrest, defendant and CS-1 talked

2    about how Thomas was not answering his phone.  They discussed

3    the $150,000 that Thomas had.  In the end, defendant stated

4    that he had a new client with $600,000, and he was not

5    concerned with what happened to the 150,000.

6            On September 28, 2007, defendant flew into Miami

7    International Airport from Panama.  The source and defendant

8    met on several occasions to discuss bringing loads of cocaine

9    into Florida and money laundering.  Defendant stated he had

10   contacts in Panama that regularly shipped multihundred

11   kilograms of cocaine in cargo containers to New York.

12   Defendant wanted to start shipping multikilogram loads of

13   cocaine into the Port of Miami.  Defendant said he was trying

14   to get a contract to launder the proceeds of a recent

15   shipment of cocaine to New York, and that he would use the

16   source to launder the money.  Defendant claimed to have a

17   contact at the airport in Panama and said that he and Sanjay

18   had "Panama under control."

19           On October 2, 2007, an undercover here in -- met

20   with an undercover and the source met with defendant in Miami

21   Beach.  The undercover represented himself to be a corrupt

22   supervisor at the Port of Miami that would be able to smuggle

23   cocaine loads into the United States.  Defendant stated he

24   wanted to ship cocaine to the Port of Miami several times a

25   month.

```
 1              In a chat on November 30, 2007, after defendant
 2    left the United States, defendant told the source that he had
 3    called Nacho, meaning the undercover, about sending
 4    50 kilograms of cocaine.  On January 22, 2008, in an e-mail
 5    chat with the source, Sanjay provided CS-1, the source, with
 6    the number and the name of the container which contained the
 7    50 kilograms of cocaine.  On the same date, the source placed
 8    a telephone call to defendant.  During this telephone call,
 9    which was taped, defendant advised the source that the lady,
10    meaning the ship on which the cocaine was secreted, was named
11    NIKOLAI and that it was en route to Miami.  The night of
12    January 24th, the vessel NIKOLAI arrived in Miami from Panama
13    carrying the container number given by defendant.  On
14    January 25th, law enforcement agents went to the port and
15    searched the container, but the container was empty.
16              In a chat on January 28th, the source asked the
17    defendant regarding the absence of the 50 kilograms in the
18    container.  Defendant said the cocaine was stolen from
19    defendant.  Defendant, who was not in Panama at the time,
20    told the source the defendant would send another load when he
21    returned to Panama.  Defendant further told the source that
22    Sanjay was in Panama and was very scared due to the robbery
23    of the cocaine.
24              Although there were not any additional money
25    pickups after the July 6th transaction (sic) detailed
```

1    earlier, and arrest of Thomas, defendant continued to chat

2    about possible pickups, including mentioning a drug load that

3    had arrived in New York, and that he was going to use the

4    source, if he could get the contract, to launder those

5    proceeds.

6           In early December, 2008, defendant sent

7    12 kilograms of cocaine to the Port of Miami so that the

8    source and the undercover could receive them.  Defendant

9    communicated with the source via telephone and chat to give

10   the source the information about the container that contained

11   the 12 kilos of cocaine.  On December 11, 2008, the container

12   arrived in the Port of Miami.  The cocaine was found just

13   like defendant said it would be.  DEA seized the 12 kilos

14   which field-tested positive for cocaine.  Lab results have

15   subsequently confirmed the substance to be cocaine.

16          The source told defendant that the cocaine had been

17   smuggled out of the port successfully and that the source had

18   it.  Defendant encouraged the source to find a buyer for the

19   cocaine in New York where it would sell for more money.  As

20   time went by, defendant increasingly demanded payment for the

21   cocaine.

22          That is what the United States would prove, your

23   Honor.  Thank you.

24          **THE COURT:**  All right.  Thank you, Mr. Morales.

25          All right.  Mr. Mahibubani, first of all, did you

1    understand the facts that Mr. Morales just related?

2            **THE DEFENDANT:**  Yes, I did.

3            **THE COURT:**  All right.  I know that you weren't

4    going to sign the factual proffer, so either you or

5    Mr. Voluck can tell me what basic facts you agree with.

6            **MR. VOLUCK:**  We, according to my client, your

7    Honor, agree to the factual proffer with the exception

8    wherever it says "Sanjay Mahibubani," which is the

9    defendant's brother, he said -- it's his contention that it's

10   he, that is, Mr. Ashok Mahibubani, who was doing the things

11   that are attributed to his brother.

12           In addition to that, on the last page, about the

13   shipment of the 12 kilos, that was sent by --

14           **THE DEFENDANT:**  Abalardo Price (phonetic).

15           **MR. VOLUCK:**  -- Abalardo Price, with the knowledge

16   of the defendant.

17           **THE COURT:**  All right.

18           **MR. VOLUCK:**  Does that cover it?

19           **MR. MORALES:**  I don't know.  It's your amendment to

20   the proffer.

21           **MR. VOLUCK:**  Well, I think that's what we agreed

22   to.

23           **MR. MORALES:**  Right.  That's what we spoke about,

24   except for that part about....

25           **THE COURT:**  All right.  With those changes,

1    Mr. Mahibubani, is the factual proffer set forth by

2    Mr. Morales correct?

3             THE DEFENDANT:  It's basically correct, except for

4    a few details which were mentioned by Mr. Voluck, namely that

5    Sanjay's name, whenever it's mentioned, is basically me.

6    Unfortunately, in an e-mail which I was using, I put my name

7    as Sanjay.  This is why it's understood to be Sanjay.  It was

8    actually me doing whatever was there.

9             And as he mentioned, the shipment of cocaine which

10   were done, that 12-kilo shipment was done by a man called

11   Abalardo Price, which is not mentioned in the proffer.  I

12   knew I had consent -- I mean I knew of the fact that the

13   merchandise was being shipped out of Panama, but the

14   merchandise was shipped by somebody else.

15            THE COURT:  It wasn't you physically who shipped it

16   out.

17            THE DEFENDANT:  Not physically, neither

18   financially, no.

19            THE COURT:  Well, what is the -- is that the only

20   transaction that you attribute to Mr. Mahibubani,

21   Mr. Morales?

22            MR. MORALES:  No.  The 12 kilos of cocaine, your

23   Honor, or --

24            THE COURT:  No, the transaction regarding Mr. Price

25   that he just mentioned.

1        **MR. MORALES:**  No, Mr. Mahibubani is not -- was not

2  mentioned in regards to that 12-kilo transaction, your Honor.

3  He was mentioned earlier in regards to the money laundering

4  and the 50-kilo attempted shipment.

5        **THE COURT:**  All right.

6        **MR. MORALES:**  We don't view the defendant's

7  objection or try -- the defendant's version that it was him

8  acting under -- using Mr. Mahibubani's name in certain

9  occasions to be an impediment to the plea, your Honor.

10        **THE COURT:**  All right.  Thank you.

11        How do you plead to the charges set forth in

12  Counts 1 and 24, Mr. Mahibubani?  Guilty or not guilty.

13        **THE DEFENDANT:**  Guilty, your Honor.

14        **THE COURT:**  It is the finding of the Court in this

15  case that Mr. Mahibubani is competent and fully capable of

16  entering an informed plea, that he is aware of the nature of

17  the charges and of the consequence of the plea, and that the

18  plea of guilty as to these two charges is knowing and

19  voluntary and supported by an independent basis in fact

20  containing the essential elements of the offenses.

21        The pleas as to Counts 1 and 24, therefore, are

22  accepted, and Mr. Mahibubani is now adjudged guilty of those

23  two offenses.

24        Maria, do we have a sentencing date?

25        **COURTROOM DEPUTY:**  Yes, Judge, December 18th at two

 1   in the afternoon.

 2            **THE COURT:**  All right.  Sentencing is set for

 3   December 18th.  A probation officer -- excuse me -- will meet

 4   with you and Mr. Voluck, Mr. Mahibubani, as well as with

 5   Mr. Morales and the agents who were involved in the case, and

 6   prepare what's called a Presentence Investigation Report.

 7   You'll have a chance to review that report with Mr. Voluck

 8   before the hearing.  He'll be able to file any comments or

 9   objections on your behalf, as will Mr. Morales on behalf of

10   the government.

11            Do you understand that procedure?

12            **THE DEFENDANT:**  Yes, I do, sir.

13            **THE COURT:**  All right.

14            Mr. Morales, anything else on behalf of the

15   government?

16            **MR. MORALES:**  No, your Honor.  Thank you.

17            **THE COURT:**  No?  Mr. Voluck?

18            **MR. VOLUCK:**  Judge, I'll be out of town on the

19   18th.  I'll be out of town that whole week.  Is it possible

20   to do it the following week?

21            **THE DEFENDANT:**  Earlier.

22            **THE COURT:**  The following week is probably worse.

23            **MR. VOLUCK:**  Earlier?

24            Or if we could do it the week earlier.

25            **THE COURT:**  Maria, why don't you put it -- when do

1    you leave, Mr. Voluck?

2         **MR. VOLUCK:**  I'll be leaving Friday, December 11th,

3    and returning on Monday, December 21st.

4         **THE COURT:**  What time do you leave on the 11th?

5         **MR. VOLUCK:**  Eight in the morning.

6         **THE COURT:**  Okay.

7         **COURTROOM DEPUTY:**  Thursday at nine?

8         **THE COURT:**  How about the previous day?

9         **MR. VOLUCK:**  That's fine.  The 10th?

10        **THE COURT:**  The 10th?

11        **MR. VOLUCK:**  The 10th is fine.

12        **THE COURT:**  Okay.

13        At what time, Maria?

14        **COURTROOM DEPUTY:**  Nine.

15        **THE COURT:**  At nine.  Okay?

16        So, sentencing will be December 10th at

17   nine o'clock in the morning.

18        All right.  We'll see you then.

19        **MR. VOLUCK:**  Thank you, your Honor.

20        **THE DEFENDANT:**  Thank you, your Honor.

21        **MR. MORALES:**  Thank you, your Honor.

22        **THE COURT:**  Maria, can you give the indictment back

23   to Mr. Morales?  Thanks.

24        (Proceedings concluded at 11:33 a.m.)

25                    -  -  -  -  -

1                    C E R T I F I C A T E

2       I certify that the foregoing is a correct transcript from

3       the record of proceedings in the above-entitled matter.

4

5

        /S/Francine C. Salopek                    1-31-10

6       Francine C. Salopek, RMR-CRR        Date
        Official Court Reporter
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**
**$149,670 [1]** 26/18
**$150,000 [1]** 27/3
**$250,000 [1]** 24/8
**$250,040 [1]** 24/24
**$298,850 [1]** 26/6
**$4 [1]** 12/24
**$4 million [1]** 12/24
**$450,000 [1]** 26/20
**$500,000 [1]** 12/12
**$600,000 [1]** 27/4
**$67,000 [1]** 26/22
**$698,560 [1]** 17/13
**$750,000 [1]** 25/18

**/**
**/S/Francine [1]** 35/5

**0**
**08-20849-CR-AJ [1]** 1/4

**1**
**1-31-10 [1]** 35/5
**10 [2]** 18/6 35/5
**10-1 [1]** 1/19
**10:36 [1]** 1/6
**10:36 A.M [1]** 2/1
**10:37 a.m [1]** 3/5
**10:50 a.m [1]** 3/5
**10th [4]** 34/9 34/10 34/11 34/16
**11 [2]** 18/10 29/11
**11:33 a.m [1]** 34/24
**11th [2]** 34/2 34/4
**12 [2]** 18/16 19/14
**12 kilograms [1]** 29/7
**12 kilos [4]** 29/11 29/13 30/13 31/22
**12-kilo [2]** 31/10 32/2
**13 [1]** 20/8
**14 [1]** 24/1
**150 kilograms [1]** 17/21
**150,000 [1]** 27/5
**15th [4]** 8/7 9/24 24/4 24/4
**16 [1]** 24/7
**18 [4]** 8/6 8/15 9/2 18/19
**1807 [1]** 1/20
**18th [4]** 24/14 32/25 33/3 33/19
**1956 [3]** 8/6 8/16 9/2

**2**
**20 [3]** 12/9 25/3 25/9
**200,000 [1]** 24/13
**2007 [17]**
**2008 [3]** 28/4 29/6 29/11
**2009 [6]** 1/5 2/1 8/8 9/25 10/25 11/15
**20849 [1]** 2/5
**21 [1]** 10/22
**21st [1]** 34/3
**22 [1]** 28/4
**22nd [1]** 25/16
**23 [2]** 15/11 25/3
**23rd [3]** 9/24 10/24 11/15
**24 [13]**
**24th [1]** 28/12
**25 [1]** 15/11
**250,000 [1]** 24/13
**25th [1]** 28/4
**26 [1]** 25/19
**27th [1]** 26/15
**28 [1]** 27/6

**28th [1]** 28/16
**2S1.1 [1]** 17/15

**3**
**30 [1]** 28/1
**305 [1]** 1/20
**33128-1807 [1]** 1/20
**33132 [1]** 1/14
**33301 [1]** 1/17
**3742 [1]** 18/19

**4**
**400 [1]** 1/19
**48 [1]** 6/25
**4th [1]** 1/14

**5**
**50 kilograms [4]** 17/21 28/4 28/7 28/17
**50-kilo [1]** 32/4
**523-5568 [1]** 1/20
**5568 [1]** 1/20
**5C1.2 [1]** 16/25

**6**
**6th [1]** 28/25

**7**
**700 [1]** 1/16
**750 [1]** 25/17

**8**
**8th [2]** 10/24 11/15

**9**
**963 [1]** 10/23
**99 [1]** 1/14

**A**
**a.m [5]** 1/6 2/1 3/5 3/5 34/24
**Abalardo [3]** 30/14 30/15 31/11
**ability [2]** 5/21 21/17
**above [2]** 14/23 35/3
**above-entitled [1]** 35/3
**absence [1]** 28/17
**accept [2]** 3/16 18/14
**acceptance [1]** 16/10
**accepted [1]** 32/22
**according [3]** 8/25 11/4 30/6
**account [9]**
**accounts [2]** 25/8 26/12
**accurate [2]** 6/12 16/15
**acting [2]** 25/4 32/8
**activities [1]** 8/19
**activity [6]** 8/24 9/8 9/12 9/14 10/12 10/17
**Adalberto [1]** 1/10
**addiction [1]** 5/5
**addition [1]** 30/12
**adjudged [1]** 32/22
**adjudication [2]** 21/9 21/16
**advise [1]** 4/6
**advised [1]** 28/9
**advisory [9]**
**affect [6]** 5/21 5/24 6/8 6/10 13/5 21/17
**affecting [1]** 8/17
**affects [2]** 14/17 14/18
**afford [1]** 22/4
**afternoon [2]** 24/21 33/1
**afternoons [1]** 5/14
**Afterwards [1]** 24/25

**agents [7]** 25/3 25/9 26/7 26/15 26/21 28/14 33/5
**agree [9]**
**agreement [15]**
**agreements [2]** 20/10 20/17
**agrees [2]** 15/11 16/8
**airport [2]** 27/7 27/17
**AJ [1]** 1/4
**alcohol [1]** 6/24
**allegation [3]** 8/7 9/3 10/23
**allegations [1]** 9/17
**alleged [1]** 12/4
**alleges [2]** 8/12 9/13
**allow [1]** 17/25
**allowed [1]** 14/2
**Although [1]** 28/24
**amendment [1]** 30/19
**AMERICA [2]** 1/4 25/10
**amount [5]** 11/6 24/13 25/24 26/1 26/3
**and/or [1]** 21/17
**announce [1]** 2/8
**answer [1]** 4/7
**answers [1]** 4/8
**antianxiety [1]** 6/1
**antidepression [1]** 6/2
**anxiety [2]** 5/9 6/11
**anxious [1]** 6/1
**apologize [1]** 2/7
**appeal [17]**
**appearances [2]** 1/12 2/8
**appellate [2]** 18/17 19/17
**applicable [1]** 19/24
**apply [2]** 17/10 18/7
**appoint [1]** 22/5
**appreciate [1]** 3/8
**arrest [2]** 27/1 29/1
**arrested [1]** 26/23
**arrived [3]** 28/12 29/3 29/12
**ASHOK [6]** 1/7 2/6 2/15 4/2 4/14 30/10
**assessment [2]** 12/14 12/25
**assist [1]** 18/6
**assistance [1]** 22/3
**Assistant [1]** 1/13
**assurance [1]** 20/24
**attempted [1]** 32/4
**attendance [1]** 22/14
**attorney [2]** 1/13 22/5
**Attorney's [1]** 20/12
**attribute [1]** 31/20
**attributed [1]** 30/11
**Avenue [1]** 1/19
**aware [1]** 32/16

**B**
**B-A-C [1]** 26/13
**BAC [2]** 26/12 26/13
**background [2]** 13/13 16/2
**bag [3]** 26/16 26/18 26/23
**balance [2]** 25/15 26/19
**bank [9]**
**banks [1]** 26/14
**basic [2]** 15/7 30/5
**basis [2]** 26/25 32/19
**Beach [1]** 27/21
**believe [2]** 19/6 20/4
**believed [1]** 17/15
**beyond [4]** 9/21 11/12 22/2 23/14
**binding [1]** 13/9
**BOP [3]** 6/18 6/20 6/22
**born [1]** 4/16

**B**

borrow **[1]**  8/1
Boulevard **[1]**  1/16
box **[2]**  24/24 26/5
Brooklyn **[1]**  26/16
brother **[2]**  30/9 30/11
Broward **[1]**  1/16
burden **[1]**  22/1
buyer **[1]**  29/18

**C**

call **[3]**  24/16 28/8 28/8
called **[5]**  5/8 8/10 28/3 31/10 33/6
calls **[1]**  25/22
capable **[1]**  32/15
capacity **[1]**  25/4
cardboard **[2]**  24/23 26/5
carefully **[1]**  23/3
cargo **[1]**  27/11
carries **[2]**  12/8 12/19
carrying **[1]**  28/13
certify **[1]**  35/2
chance **[5]**  7/9 13/4 15/1 25/18 33/7
charge **[5]**  9/20 10/18 11/8 11/11 11/24
charged **[2]**  16/1 21/22
charges **[8]**
chat **[1]**
China **[1]**  25/11
choose **[1]**  14/4
chose **[4]**  7/15 9/19 11/10 22/18
circumstances **[4]**  13/17 14/8 14/14
16/16
citizenship **[1]**  5/2
civil **[1]**  21/10
claimed **[1]**  27/16
client **[2]**  27/4 30/6
close **[1]**  2/7
cocaine **[26]**
Code **[5]**  8/6 8/16 9/2 10/23 18/20
coerce **[1]**  21/3
college **[2]**  4/23 4/24
Colloquy **[1]**  1/10
comments **[2]**  13/24 33/8
commerce **[1]**  8/18
commission **[2]**  24/2 24/12
commit **[5]**  8/10 8/15 9/1 10/5 16/19
communicate **[1]**  24/5
communicated **[1]**  29/9
communicating **[1]**  23/18
compel **[1]**  22/14
competent **[3]**  7/3 23/14 32/15
complete **[1]**  16/15
comprehend **[1]**  5/22
compulsory **[1]**  22/13
computer **[1]**  1/23
conceal **[2]**  8/20 9/10
concealment **[1]**  9/15
concept **[1]**  13/18
concerned **[1]**  27/5
concerning **[1]**  15/25
concluded **[1]**  34/24
conclusions **[1]**  17/10
condition **[1]**  6/15
conduct **[3]**  8/16 12/4 16/16
conducted **[1]**  26/17
conducting **[2]**  8/22 26/22
confidential **[3]**  23/15 23/18 24/14
confirmed **[1]**  29/15
consent **[1]**  31/12

consequence **[1]**  32/17
consequences **[1]**  21/14
consideration **[1]**  3/9
consistent **[1]**  18/1
conspiracy **[2]**  8/10 9/1
contact **[2]**  25/18 27/17
contacted **[1]**  24/16
contacts **[1]**  27/10
contained **[5]**  20/11 24/24 26/6 28/6
29/10
container **[7]**  28/6 28/13 28/15 28/15
28/18 29/10 29/11
containers **[1]**  27/11
containing **[2]**  11/6 32/20
contains **[2]**  14/23 18/16
contention **[1]**  30/9
continued **[2]**  24/5 29/1
contract **[2]**  27/14 29/4
control **[3]**  8/21 9/11 27/18
controlled **[4]**  9/16 11/3 17/17 17/19
conversation **[1]**  24/11
conversations **[1]**  23/20
conviction **[1]**  18/20
copy **[4]**  7/7 7/19 7/23 8/3
corrupt **[1]**  27/21
counsel **[2]**  20/13 22/4
Count **[16]**
Count 1 **[9]**
Count 24 **[7]**  10/22 10/22 11/4 11/25
12/3 12/19 13/2
Counts **[7]**  2/20 7/21 15/9 15/11 23/6
32/12 32/21
Counts 1 **[6]**  2/20 7/21 15/9 23/6 32/12
32/21
Counts 2 **[1]**  15/11
County **[2]**  8/9 10/25
court **[7]**  1/1 1/18 1/18 1/19 20/22
32/14 35/6
cover **[1]**  30/18
CR **[1]**  1/4
credit **[1]**  26/13
criminal **[1]**  13/13
criteria **[2]**  16/25 17/3
cross **[1]**  22/9
cross-examined **[1]**  22/9
CRR **[2]**  1/18 35/6
CS **[3]**  26/21 27/1 28/5
CS-1 **[2]**  27/1 28/5
CS-2 **[1]**  26/21

**D**

Dade **[2]**  8/8 10/25
date **[3]**  28/7 32/24 35/6
DEA **[7]**  23/15 23/17 24/14 25/2 25/3
26/7 29/13
December **[6]**  29/11 32/25 33/3 34/2
34/3 34/16
December 10th **[1]**  34/16
December 11 **[1]**  29/11
December 11th **[1]**  34/2
December 18th **[2]**  32/25 33/3
December 21st **[1]**  34/3
December, **[1]**  29/6
December, 2008 **[1]**  29/6
decides **[1]**  20/2
decline **[1]**  22/16
defendant **[48]**
defendant's **[3]**  30/9 32/6 32/7
defense **[5]**  7/14 22/4 22/9 22/15 22/18
demanded **[1]**  29/20

depart **[3]**  14/14 14/16 14/18
departure **[1]**  19/24
deposited **[2]**  25/2 26/8
depression **[1]**  5/9
deprive **[1]**  21/10
designed **[2]**  8/19 9/9
detailed **[1]**  28/25
details **[1]**  31/4
detectable **[1]**  11/6
determine **[2]**  13/22 18/11
disclosure **[1]**  16/15
discuss **[4]**  7/9 13/4 18/17 27/8
discussed **[4]**  23/22 24/2 25/24 27/2
discussion **[2]**  8/4 23/24
disguise **[2]**  8/20 9/10
dismissal **[1]**  15/11
disorders **[1]**  5/9
distribution **[1]**  17/17
district **[7]**  1/1 1/2 1/11 1/19 8/9 10/25
12/5
divide **[1]**  26/3
divided **[1]**  26/20
DIVISION **[1]**  1/3
doctor **[1]**  6/14
document **[1]**  14/24
dollars **[2]**  12/15 12/25
doubt **[4]**  9/21 11/12 22/2 23/15
downward **[1]**  14/18
drug **[3]**  5/8 24/3 29/2
drugs **[2]**  5/5 6/24

**E**

e-mail **[3]**  23/20 28/4 31/6
early **[1]**  29/6
earnings **[1]**  24/5
effort **[1]**  20/24
Eight **[1]**  34/5
elected **[1]**  22/17
electronically **[1]**  25/4
elements **[3]**  10/18 11/24 32/20
empty **[1]**  28/15
en **[1]**  28/11
en route **[1]**  28/11
encouraged **[1]**  29/18
enforcement **[1]**  28/14
engage **[1]**  10/10
enter **[5]**  2/20 7/3 7/14 12/17 22/23
entitled **[1]**  35/3
Eric **[2]**  1/13 2/9
Esq **[1]**  1/15
essential **[1]**  32/20
estimate **[2]**  13/20 18/12
evenings **[2]**  5/14 5/16
everybody **[1]**  2/12
evidence **[2]**  18/3 23/14
examined **[1]**  22/9
exceeds **[1]**  19/22
exception **[1]**  30/7
exceptions **[3]**  16/21 19/18 19/21
exchange **[2]**  15/10 19/15
excuse **[8]**
executed **[1]**  20/12
explain **[1]**  23/4
explained **[1]**  15/10
Exports **[1]**  20/1
exposed **[2]**  12/17 13/2
extra **[1]**  7/23
extraordinary **[1]**  14/13

**F**

facing **[1]**  15/20

**F**

fact [3]  21/6 31/12 32/19
factors [3]  13/16 17/4 19/8
facts [6]  15/23 16/17 19/3 23/7 30/1
 30/5
factual [6]  2/25 3/11 18/1 30/4 30/7
 31/1
fail [1]  16/14
false [1]  4/9
falsely [1]  4/8
federal [2]  9/16 10/13
felony [1]  21/9
field [1]  29/14
field-tested [1]  29/14
figure [2]  13/11 13/14
file [1]  33/8
Filipino [1]  5/3
Finally [2]  17/18 22/16
financial [4]  8/17 8/23 10/11 10/15
financially [1]  31/18
findings [2]  17/10 18/1
fine [4]  12/12 12/23 34/9 34/11
finish [1]  4/24
firearm [1]  21/13
five kilograms [2]  11/5 11/22
fix [1]  14/15
flew [1]  27/6
FLORIDA [8]
force [1]  21/2
foregoing [1]  35/2
foreign [1]  8/17
forfeiture [1]  18/7
form [4]  8/24 9/8 10/16 23/4
Fort [1]  1/17
Francine [3]  1/18 35/5 35/6
free [1]  21/6
Friday [1]  34/2
function [1]  6/11
funds [7]  9/5 9/7 10/10 17/13 17/16
 25/2 25/5

**G**

general [1]  7/10
Gondola [3]  24/22 24/24 25/25
government [31]
greater [1]  12/14
ground [1]  19/9
grounds [2]  18/24 20/4
Guideline [1]  19/25
Guidelines [11]
guilt [3]  21/9 21/16 22/2
guilty [30]

**H**

half [1]  26/3
hand [1]  4/11
happy [1]  3/21
He'll [1]  33/8
hear [1]  22/7
hearing [1]  33/8
hereinafter [1]  24/15
higher [1]  14/16
history [1]  13/13
hold [1]  21/12
Honestly [1]  5/23
Hong [3]  25/8 25/14 26/14
Honor [36]
Honorable [1]  1/10
hope [1]  2/6

hopefully [1]  6/9
hours [1]  6/25
hundred [2]  12/15 12/25

**I**

I'll [7]  3/2 3/21 13/14 19/18 33/18
 33/19 34/2
I'm [8]
I've [3]  15/10 15/17 15/21
identified [1]  23/16
illegal [5]  8/10 9/14 9/25 11/1 11/16
illness [2]  5/5 6/15
immigration [1]  21/17
impediment [1]  32/9
import [2]  11/2 11/21
importation [2]  9/15 17/17
impose [8]
imposed [1]  19/7
imprisonment [5]  12/10 12/20 12/21
 12/21 12/22
improper [1]  19/2
includes [1]  15/24
including [2]  23/24 29/2
incorrect [2]  19/2 19/5
increasingly [1]  29/20
independent [1]  32/19
indictment [11]
individuals [1]  8/15
inform [1]  15/23
information [3]  15/25 16/2 29/10
informed [2]  24/11 32/16
initial [2]  14/14 14/16
innocence [1]  22/20
innocent [1]  22/1
instant [1]  23/19
instructed [3]  24/9 25/13 25/14
instructions [5]  23/17 25/6 25/24 26/11
 26/12
instruments [2]  9/5 9/7
intent [1]  8/13
intentionally [1]  10/3 11/19
international [3]  26/12 26/13 27/7
Internet [2]  23/19 25/6
interstate [1]  8/17
investigation [3]  13/23 26/25 33/6
involvement [1]  19/4
issuance [1]  22/13
issue [1]  23/8

**J**

January [8]
January 22 [1]  28/4
January 23rd [3]  9/24 10/24 11/15
January 24th [1]  28/12
January 25th [1]  28/14
January 28th [1]  28/16
Jeffrey [3]  1/15 1/16 2/14
joint [2]  17/22 17/24
jointly [2]  16/24 17/18
Jordan [1]  1/10
judge [4]  1/11 6/5 32/25 33/18
July [10]
July 15th [1]  24/4
July 16 [1]  24/7
July 18th [1]  24/14
July 20 [2]  25/3 25/9
July 22nd [1]  25/16
July 23 [1]  25/3
July 26 [1]  25/19
July 27th [1]  26/15

July 6th [1]  28/25
June [7]  8/7 9/24 10/24 11/15 23/17
 24/1 24/4
June 14 [1]  24/1
June 15th [3]  8/7 9/24 24/4
June 8 [1]  23/17
June 8th [2]  10/24 11/15
jury [3]  9/22 21/12 21/24

**K**

kilo [3]  31/10 32/2 32/4
kilograms [10]
kilos [4]  29/11 29/13 30/13 31/22
knowing [4]  8/19 9/7 9/8 32/18
knowingly [5]  8/13 8/16 9/4 10/3 11/19
knowledge [1]  30/15
Kong [3]  25/8 25/14 26/14

**L**

Lab [1]  29/14
LADHARAM [4]  1/7 2/6 4/2 4/14
Ladharam-Mahibubani [1]  4/14
lady [1]  28/9
language [1]  18/16
Lauderdale [1]  1/17
launder [4]  10/10 27/14 27/16 29/4
laundered [3]  17/13 17/15 24/9
launderer [1]  23/16
laundering [9]
law [3]  1/16 9/16 28/14
laws [2]  10/6 10/13
leading [1]  25/23
learned [1]  25/9
leave [2]  34/1 34/4
leaving [1]  34/2
led [2]  19/2 19/4
letter [1]  20/12
levels [1]  16/10
life [1]  12/21
light [1]  19/7
Limited [1]  25/11
listen [1]  23/3
load [2]  28/20 29/2
loaded [1]  26/23
loads [3]  27/8 27/12 27/23
location [4]  8/21 9/11 24/21 26/5
lower [1]  14/16

**M**

MAHIBUBANI [23]
Mahibubani's [1]  32/8
MAHIBUBANI-LADHARAM [3]  1/7 2/6
 4/2
mail [3]  23/20 28/4 31/6
maintain [1]  26/25
male [2]  24/16 24/20
man [1]  31/10
mandatory [2]  12/14 12/24
manufacture [2]  9/14 17/17
Maria [6]  3/10 7/19 32/24 33/25 34/13
 34/22
Mario [3]  24/22 25/25 25/25
matter [1]  35/3
maximum [5]  12/9 12/12 12/20 12/23
 19/22
mean [1]  31/12
meaning [2]  25/17 25/25 28/3 28/10
means [2]  4/7 23/25
mechanical [1]  1/23
medical [1]  6/15

## M

medication [1]  6/24
medications [3]  5/10 5/20 6/23
meet [4]  16/24 17/3 17/4 33/3
meeting [2]  24/21 26/20
mental [1]  5/5
merchandise [2]  31/13 31/14
merely [1]  14/4
messaging [1]  23/19
MIAMI [22]
Miami-Dade [2]  8/8 10/25
million [1]  12/24
minimum [2]  12/20 17/2
minutes [2]  3/1 3/2
misapplied [1]  18/25
misconduct [1]  16/19
misinterpreted [1]  19/1
misrepresented [1]  16/17
mixture [1]  11/6
MONDAY [2]  2/1 34/3
monetary [1]  9/5
money [22]
month [1]  27/25
Morales [14]
morning [14]
mornings [2]  5/15 5/16
motion [1]  16/13
Mr. [48]
Mr. Ashok [2]  2/15 30/10
Mr. Mahibubani [15]
Mr. Mahibubani's [1]  32/8
Mr. Morales [12]
Mr. Price [1]  31/24
Mr. Voluck [17]
multihundred [1]  27/10
multikilogram [2]  23/23 27/12

## N

N.E [1]  1/14
Nacho [1]  28/3
name [7]  2/7 4/13 14/23 28/6 31/5 31/6
 32/8
named [1]  28/10
namely [1]  31/4
Narain [2]  2/6 4/2 4/14
narcotic [1]  5/5
narcotics [1]  10/13
nature [4]  8/20 9/10 15/17 32/16
neither [1]  31/17
New York [10]
NIKOLAI [2]  28/11 28/12
nine [4]  34/7 34/14 34/15 34/17
nine o'clock [1]  34/17
normally [1]  5/25
North [1]  1/19
November [1]  28/1
November 30 [1]  28/1
number [9]
Number 08-20849 [1]  2/5
number one [1]  24/17
number two [1]  24/15

## O

o'clock [1]  34/17
oath [1]  4/7
objection [1]  32/7
objections [2]  13/24 33/9
objective [2]  9/1 9/3
observed [1]  26/16

obtain [2]  9/21 11/12
occasions [2]  27/8 32/9
October [3]  1/5 2/1 27/19
October 2 [1]  27/19
OCTOBER 5 [1]  2/1
offense [5]  11/5 16/9 16/16 17/16
 17/20
offenses [10]
office [3]  16/15 20/12 21/12
officer [2]  15/23 33/3
Offices [1]  1/16
Official [1]  1/18 35/6
Omar [2]  24/23 25/22
ongoing [1]  26/25
opinion [1]  7/2
options [1]  7/13
order [1]  17/3
original [1]  24/16
ownership [2]  8/21 9/11

## P

PA [1]  1/16
package [1]  25/1
page [2]  14/23 30/12
page 7 [1]  14/23
Panama [1]
paragraph [11]
paragraph 10 [1]  18/6
Paragraph 11 [1]  18/10
paragraph 12 [2]  18/16 19/14
Paragraph 13 [1]  20/8
Paragraph 3 [1]  15/16
paragraph 6 [1]  15/22
paragraph 7 [1]  16/8
paragraph 8 [2]  16/23 17/5
paragraph 9 [1]  17/8
paragraphs [1]  15/19
paragraphs 4 [1]  15/19
part [4]  8/20 9/10 25/13 30/24
parties [7]  13/24 17/12 17/14 17/18
 18/15 20/13 24/3
parties' [1]  14/5
pass [1]  25/20
Paxil [1]  5/8
payment [1]  29/20
peers [1]  21/24
penalties [4]  12/16 13/1 15/20 15/21
pending [2]  7/7 24/18
people [2]  25/17 25/21
percent [1]  24/12
percentage [1]  24/2
perjury [1]  4/9
permitted [1]  19/22
persist [1]  21/22
person [5]  10/1 11/1 11/17 24/10 24/19
personal [1]  16/10
pertinent [1]  15/24
Philippines [4]  4/17 4/18 25/8 25/15
phone [1]  27/2
phonetic [1]  30/14
physically [2]  31/15 31/17
picked [1]  26/4
picking [1]  24/19
pickups [2]  28/25 29/2
pistol [2]  26/23 26/23
place [6]  9/5 9/6 11/2 11/21 12/4 26/16
Plaintiff [1]  1/5
plan [1]  8/14
plea [23]
plead [11]

pleading [3]  21/3 21/5 21/8
pleas [1]  32/21
point [2]  9/24 11/15
port [7]  27/13 27/22 27/24 28/14 29/7
 29/12 29/17
positive [1]  29/14
possess [1]  21/13
prediction [2]  13/21 18/13
prepare [1]  6/9
prescribed [1]  6/9
Presentence [2]  13/23 33/6
pressure [1]  21/3
presumed [1]  21/25
presumption [1]  22/20
preventing [1]  6/4
Price [4]  30/14 30/15 31/11 31/24
print [1]  7/19
prison [1]  12/9
probation [3]  15/23 16/15 33/3
problems [1]  25/12
procedure [1]  33/11
proceed [3]  3/7 23/11 23/13
proceedings [4]  1/23 18/7 34/24 35/3
proceeds [12]
process [1]  22/13
produced [1]  1/23
professional [1]  6/15
proffer [9]
profit [1]  23/24
prohibited [2]  10/11 12/13
promise [3]  13/22 18/13 20/23
promises [1]  20/10
property [3]  8/23 10/15 12/13
prosecution [1]  4/9
prosecutor [1]  3/14
prove [13]
proved [1]  23/14
provided [2]  26/10 28/5
proving [1]  22/1
provisions [1]  15/8
psychiatrist [2]  6/17 6/20
punishable [1]  9/16
purchase [1]  9/15
purposes [3]  17/13 17/14 17/20
pursuant [1]  2/21

## Q

quantity [1]  17/19
Queens [1]  24/22
question [1]  6/4
questioned [1]  22/9
questions [2]  3/17 4/8

## R

Raise [1]  4/1
range [6]  13/11 13/14 14/14 14/15
 14/16 19/25
ready [1]  3/7
receipt [1]  9/15
receive [5]  13/24 14/4 26/1 26/2 29/8
received [5]  7/6 18/12 24/23 25/1
 25/24
receiving [1]  25/12
recent [1]  27/14
Recess [1]  3/5
recommend [3]  16/9 16/24 17/18
recommendation [2]  16/3 16/13
recommendations [6]  14/5 17/9 17/22
 17/25 18/1 18/14
record [2]  8/4 35/3

**R**

**recorded [1]** 1/23
**recovered [1]** 26/22
**reduce [2]** 6/10 16/9
**referred [1]** 9/14
**refuse [1]** 16/14
**regularly [1]** 27/10
**release [2]** 12/11 12/23
**released [1]** 20/3
**relevant [2]** 15/24 16/16
**remain [1]** 21/17
**reminds [1]** 18/10
**report [3]** 13/24 33/6 33/7
**Reporter [3]** 1/18 1/18 35/6
**represent [1]** 22/5
**representations [1]** 20/11
**represented [6]** 8/24 9/7 10/11 10/16 24/19 27/21
**request [1]** 2/25
**required [4]** 13/9 13/10 16/12 18/14
**reserves [2]** 15/22 16/3
**residence [1]** 26/21
**responsibility [1]** 16/11
**result [2]** 14/3 15/20
**results [1]** 29/14
**resumed [1]** 23/18
**retain [1]** 22/20
**return [1]** 21/18
**returned [3]** 24/15 25/10 28/21
**returning [1]** 34/3
**revealed [1]** 26/18
**review [2]** 13/23 33/7
**rights [6]** 3/18 18/17 19/17 21/10 22/10 22/11
**RMR [2]** 1/18 35/6
**RMR-CRR [1]** 35/6
**robbery [1]** 28/22
**Room [1]** 1/19
**route [1]** 28/11

**S**

**safety [1]** 17/3
**sale [1]** 9/15
**Salopek [3]** 1/18 35/5 35/6
**Sanjay [10]**
**Sanjay's [1]** 31/5
**scared [1]** 28/22
**school [1]** 4/22
**scoring [1]** 13/12
**search [3]** 26/17 26/21 26/22
**searched [1]** 28/15
**second [5]** 3/24 8/1 8/25 16/17 19/18
**secreted [1]** 28/10
**Section [7]** 8/6 8/16 9/2 10/23 16/25 17/15 18/19
**Section 1956 [3]** 8/6 8/16 9/2
**Section 2S1.1 [1]** 17/15
**Section 3742 [1]** 18/19
**Section 5C1.2 [1]** 16/25
**Section 963 [1]** 10/23
**seek [1]** 15/11
**seized [1]** 29/13
**send [3]** 25/13 25/15 28/20
**sending [2]** 23/23 28/3
**sense [1]** 7/13
**sentence [17]**
**sentencing [18]**
**September [1]** 27/6
**September 28 [1]** 27/6

**series [1]** 3/17
**serve [1]** 21/12
**ship [2]** 27/24 28/10
**shipment [5]** 27/15 30/13 31/9 31/10 32/4
**shipments [1]** 23/23
**shipped [3]** 27/10 31/13 31/14 31/15
**shipping [1]** 27/12
**sic [3]** 4/15 26/14 28/25
**sign [3]** 3/11 14/23 30/4
**signature [1]** 14/23
**signed [3]** 8/3 15/2 23/12
**silence [1]** 22/18
**Singapore [1]** 26/14
**slowly [1]** 23/11
**smuggle [2]** 23/25 27/22
**smuggled [1]** 29/17
**smuggling [1]** 24/6
**solely [1]** 14/3
**source [56]**
**source's [1]** 24/10
**SOUTHERN [1]** 1/2 12/5
**special [2]** 12/14 12/24
**specific [1]** 8/13
**specified [4]** 8/18 9/13 10/8 10/12
**spoke [2]** 25/22 30/23
**stand [1]** 3/24
**stated [3]** 27/3 27/9 27/23
**statement [1]** 4/10
**STATES [26]**
**States vs. Ashok [1]** 2/6
**status [1]** 21/17
**statute [2]** 18/22 19/23
**statutory [2]** 13/15 19/8
**stenography [1]** 1/23
**stolen [1]** 28/18
**stop [2]** 3/21 26/17
**strategies [1]** 7/15
**Street [1]** 1/14
**stress [1]** 6/11
**subject [2]** 16/4 19/17
**subpoenas [1]** 22/13
**substance [6]** 9/16 11/3 11/6 17/18 17/19 29/15
**successfully [1]** 29/17
**suffered [1]** 5/4
**Suite [1]** 1/16
**supervised [2]** 12/10 12/22
**supervisor [1]** 27/22
**supported [1]** 32/19
**surrounding [1]** 16/16
**surveilling [1]** 26/15
**sworn [2]** 3/25 4/3

**T**

**Tafil [1]** 5/8
**take [7]** 5/12 5/13 5/25 13/14 14/2 18/22 19/8
**taken [2]** 3/5 6/24
**talk [1]** 7/12
**talked [2]** 20/22 27/1
**taped [1]** 28/9
**telephone [9]**
**telephoned [1]** 24/25
**tell [5]** 4/13 5/1 18/17 19/18 30/5
**tells [1]** 15/16
**ten percent [1]** 24/12
**ten-year [1]** 17/2
**term [6]** 12/9 12/10 12/20 12/21 12/21 12/22

**terms [1]** 15/4
**tested [1]** 29/14
**testify [3]** 22/14 22/17 22/18
**thank [17]**
**Thanks [1]** 34/23
**Thereafter [2]** 25/21 26/10
**think [4]** 18/25 19/3 19/5 30/21
**Thirty [1]** 4/21
**Thirty-six [1]** 4/21
**Thomas [16]**
**Thomas' [1]** 27/1
**Thursday [1]** 34/7
**time [8]**
**times [1]** 27/24
**Title [5]** 8/6 8/15 9/2 10/22 18/19
**Title 18 [4]** 8/6 8/15 9/2 18/19
**Title 21 [1]** 10/22
**town [2]** 33/18 33/19
**traffic [1]** 26/17
**transaction [6]** 24/18 25/23 28/25 31/20 31/24 32/2
**transactions [9]**
**transcript [3]** 1/10 1/23 35/2
**transfer [2]** 9/4 9/9
**transferred [1]** 25/5
**transfers [1]** 25/10
**transmission [1]** 9/9
**transmit [1]** 9/4
**transport [2]** 9/4 9/9
**treated [2]** 5/5 5/7
**trial [10]**
**twice [2]** 5/13 12/12

**U**

**U.S [1]** 1/13
**ultimately [1]** 18/21
**undercover [9]**
**understand [35]**
**understanding [5]** 6/5 9/25 11/16 15/13 20/9
**understandings [1]** 20/11
**understood [1]** 31/7
**undertakings [1]** 19/16
**Unfortunately [1]** 31/6
**UNITED [26]**
**unknown [1]** 24/20
**unlawful [8]**
**unless [2]** 20/11 22/17
**unreasonable [1]** 19/7
**upward [3]** 14/17 19/24 19/24
**us [1]** 3/9

**V**

**valuable [1]** 21/10
**value [2]** 12/12 17/12
**valve [1]** 17/3
**variance [1]** 19/24
**vehicle [6]** 24/23 26/5 26/16 26/17 26/18 26/19
**verdict [2]** 9/21 11/12
**version [1]** 32/7
**vessel [1]** 28/12
**via [3]** 23/19 25/6 29/9
**view [1]** 32/6
**violating [1]** 8/6
**violation [3]** 10/6 10/22 11/4
**violations [3]** 8/15 9/1 10/13
**Voluck [20]**
**voluntarily [1]** 22/17
**voluntary [1]** 32/19

**V**

vote [1]  21/11
vs. [1]  2/6

**W**

waived [1]  22/24
waiver [3]  18/16 18/18 20/4
waiving [1]  19/17
week [4]  33/19 33/20 33/22 33/24
whatsoever [1]  20/3
whenever [1]  31/5
wherever [1]  30/8
whichever [1]  12/13
willfully [2]  8/13 10/3
wire [3]  25/5 25/10 25/10
wire-transferred [1]  25/5
wires [2]  25/8 26/11
wiring [1]  26/11
wish [1]  3/20
wishes [1]  2/20
withdraw [1]  14/3
witnesses [3]  22/8 22/9 22/14
worked [2]  3/14 23/16
worse [1]  33/22
written [1]  2/21
wrong [1]  19/4

**Y**

York [10]
you'd [1]  21/25